# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

FARM BUREAU MUTUAL INSURANCE, )
COMPANY OF MICHIGAN, a Michigan ) Case No. 17-cv-14044
Corporation, a/s/o New Flevo Dairy, Inc. )
                                         ) Judge Bernard A. Friedman
      Plaintiff, ) Magistrate Judge Elizabeth A.
                                          ) Stafford
v. )
                                          )
                                          )
CNH INDUSTRIAL AMERICA, LLC d/b/a )
CNH INDUSTRIAL AMERICA, LLC D/B/A )
NEW HOLLAND AGRICULTURE, a Wisconsin )
Corporation, )
                                          )
      Defendant. )

_____

## DEFENDANT'S MOTION TO EXCLUDE OPINIONS
## OF PLAINTIFF'S EXPERT JERRY DAHL, P.E.

Defendant CNH Industrial America, LLC ("CNH"), through its counsel Frost Brown Todd, LLC, and Clark Hill PLC, and pursuant to Federal Rule of Evidence 702, moves for entry of an order excluding the opinions of Plaintiff's expert, Jerry Dahl, regarding the origin and cause of the fire and regarding alleged design defects in the Tractor that is the subject matter of this litigation. In further support of this Motion, CNH relies upon the attached brief in support.

In accordance with Local Rule 7.1(a), counsel for CNH certifies that on November 29, 2018, an email was sent to counsel for Farm Bureau advising that the CNH intended to file the foregoing motion and seeking concurrence. As of the

time of filing, counsel for CNH has not received a response and therefore there is no concurrence.

Dated: November 30, 2018                    Respectfully Submitted,

                                            s/Bethany G. Stawasz
                                            David W. Centner (P43071)
                                            Bethany G. Stawasz (P75578)
                                            CLARK HILL, PLC
                                            200 Ottawa Avenue NW, Suite 500
                                            Grand Rapids, MI  49503
                                            Phone: (616) 608-1100
                                            dcentner@clarkhill.com
                                            bstawasz@clarkhill.com
                                            *Counsel for Defendant,*
                                            *CNH Industrial America, LLC*

                                            and

                                            D. Christopher Robinson (pro hac vice)
                                            Jessica Williams Schnelker (pro hac vice)
                                            FROST BROWN TODD LLC
                                            201 N. Illinois Street, Suite 1900
                                            Indianapolis, IN  46204
                                            Phone: (317) 237-3800
                                            jschnelker@fbtlaw.com
                                            *Counsel for Defendant,*
                                            *CNH Industrial America, LLC*

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| FARM BUREAU MUTUAL INSURANCE, | ) |
| COMPANY OF MICHIGAN, a Michigan | ) Case No. 17-cv-14044 |
| Corporation, a/s/o New Flevo Dairy, Inc. | ) |
| | ) Judge Bernard A. Friedman |
| Plaintiff, | ) Magistrate Judge Elizabeth A. |
| | ) Stafford |
| v. | ) |
| | ) |
| | ) |
| CNH INDUSTRIAL AMERICA, LLC d/b/a | ) |
| CNH INDUSTRIAL AMERICA, LLC D/B/A | ) |
| NEW HOLLAND AGRICULTURE, a Wisconsin | ) |
| Corporation, | ) |
| | ) |
| Defendant. | ) |

_____

## BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO EXCLUDE
## OPINIONS OF PLAINTIFF'S EXPERT JERRY DAHL, P.E.

## TABLE OF CONTENTS

ISSUE PRESENTED ...................................................................................... iii

CONTROLLING AUTHORITY ...................................................................... iv

INDEX OF AUTHORITIES ............................................................................. v

   I.   BACKGROUND ................................................................................2

   II.  LEGAL STANDARD ........................................................................3

   III.  ARGUMENT ...................................................................................5

      a.  By his own admission, Mr. Dahl is not qualified to offer
          opinions about the origin and cause of the fire ................................5

      b.  Mr. Dahl's design defect opinion is derivative of his origin and cause
          opinions; because he is not competent to offer origin and cause
          opinions, his design defect opinion is irrelevant and must be excluded. ....10

CONCLUSION ...........................................................................................13

220646761.1

## ISSUE PRESENTED

Whether the fire origin and cause opinions and design defect opinions of Plaintiff's expert Jerry Dahl, P.E., should be excluded, where Mr. Dahl concedes that he lacks the qualifications and competence to offer origin and cause opinions, and his design defect opinions are wholly dependent on his inadmissible origin opinions.

220646761.1

# CONTROLLING AUTHORITY

## Cases

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)

*Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)

*Avendt v. Covidien Inc.,* 314 F.R.D. 547, 561 (E.D. Mich. 2016)

*Sigler v. American Honda Motor Co.*, 532 F.3d 469 (6th Cir. 2008)

*Marathon Petroleum Co. LP v. Midwest Marine, Inc*., 906 F.Supp.2d 673, 684 (E.D. Mich. 2012)

## Rules and Statutes

Fed. R. Evid. 702

# INDEX OF AUTHORITIES

**Cases**

*Avendt v. Covidien Inc.,*
   314 F.R.D. 547 (E.D. Mich. 2016) ............................................................8

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
   509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) ........................4

*In re Baycol Prods. Litig.,*
   532 F.Supp.2d 1029, 1047 ......................................................................8

*Long v. Monaco Coach Corp.,*
   2007 WL 4613000 (E.D. Tenn. Sept. 27, 2007) ....................................8

*Marathon Petroleum Co. LP v. Midwest Marine, Inc.,*
   906 F.Supp.2d 673 (E.D. Mich. 2012) .................................................12

*Pride v. BIC Corp.,*
   218 F.3d 566 (6th Cir. 2000) ...................................................................4

*Sigler v. American Honda Motor Co.,*
   532 F.3d 469 (6th Cir. 2008) ......................................................... 4, 9, 10

*Thorn v. Novartis Pharmaceuticals Corp.,*
   2013 WL 11451758 (E.D. Tenn. June 26, 2013) ...................................8

**Rules**

Federal Rule of Evidence 702 ......................................................................4

220646761.1

This case arises out of a fire on a 2014 New Holland Model T8.390 tractor (the "Tractor") that occurred on September 30, 2015 in Clayton, Lenawee County, Michigan.   In this subrogation action, Plaintiff Farm Bureau Mutual Insurance Company ("Farm Bureau") seeks to recover for damage to its insured's tractor. Plaintiff has identified Jerry Dahl, P.E., of Nederveld, Inc. as an expert.  He has submitted a Rule 26 Report, which contains opinions regarding the origin and cause of the fire, as well as design defect opinions. (Exh. 1, Dahl Rule 26 Report). In his deposition, however, Mr. Dahl said that he is not an expert in fire investigations or the origin and cause of fires. (Exh. 2, Dahl Dep. p. 41-43, 75, 210).  He explained that the cause and origin opinions in the Rule 26 Report were devised by a colleague at Nederveld, James Smith, who has since left the company. (Exh. 2, Dahl Dep., p. 49-50). Mr. Smith, unlike Mr. Dahl, is a Certified Fire and Explosion Investigator and a Certified Vehicle Fire Investigator.  (Exh. 2, Dahl Dep., p. 41).  Although Mr. Smith signed the Rule 26 Report along with Mr. Dahl, Mr. Smith has not been designated as a testifying expert.  By his own admission, Mr. Dahl is not qualified to offer expert testimony about the origin and cause of the fire and he should not be permitted to offer opinions – whether his own or those of Mr. Smith – on those issues.

Mr. Dahl's opinions regarding alleged design defects in the Tractor should also be excluded because they are wholly grounded on his inadmissible origin and

causation opinions. Farm Bureau has designated another expert, William Wilson, who places the origin of the fire in a different location, which renders Mr. Dahl's design defect opinion irrelevant and of no assistance to the jury in determining any fact in issue.

## I.     BACKGROUND

Alfredo Bernal was operating the Tractor with an attached deep digger implement on September 30, 2015 when he smelled smoke.  (Exh. 3, Bernal Dep., p. 23).  He turned off the engine, descended from the cab and observed smoke and then flames coming from the Tractor.   (Exh. 3, Bernal Dep., p. 23-24). Jake Schot, who was driving nearby in the field, approached and mounted the Tractor, started the diesel engine and drove the Tractor several hundred feet to a low area of the field where he thought there was pooled water he could drive into to extinguish the fire.  (Exh. 4, Wilson Rule 26 Report, p. 3). He found no water, so he stopped the engine and got out.  (Exh. 4, Wilson Rule 26 Report, p. 3). The fire continued to burn and ultimately consumed the Tractor entirely.

Farm Bureau has identified two experts, Mr. Dahl and Mr. Wilson.  Both have expressed opinions about the origin and cause of the fire.  Their opinions about the origin of the fire conflict with one another.  Mr. Dahl states that the fire originated on the right side of the cab, in an area between the selective catalytic reduction (SCR) catalyst canister and the high-density polypropylene diesel fuel

tank, *behind* the exhaust inlet pipe that feeds into the SCR canister.  (Exh. 1, Dahl Rule 26 Report, p. 2).   Mr. Wilson believes the fire originated *in front of* the exhaust inlet pipe in an area between the SCR canister and a removable shield that extends across the front of the canister.  (Exh. 4, Wilson Rule 26 Report, p. 6).

Their opinions about the cause of the fire diverge as well.  While both believe that crop debris near the SCR canister ignited, Mr. Dahl believes that ignition was caused either by direct contact with the canister or the exhaust inlet pipe, or by exposure to radiant or conductive heat transfer from those surfaces. (Exh. 1, Dahl Rule 26 Report, p. 2).  Mr. Wilson believes that the debris ignited after undergoing the process of pyrolysis which lowered the ignition point of the debris, allowing it to catch fire. (Exh. 4, Wilson Rule 26 Report, p. 6-7). Neither expert has produced evidence of testing or accepted literature showing that the implicated components of the Tractor reach temperatures sufficient to ignite crop debris.

## II.    LEGAL STANDARD

Under the Federal Rules of Evidence and *Daubert*, trial courts must serve as "gatekeepers" to keep unreliable and speculative testimony out of trial.  Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

3

(a)    the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b)    the testimony is based on sufficient facts or data;

(c)    the testimony is the product of reliable principles and methods; and

(d)    the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  In *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), the Supreme Court set forth the standard for admissibility of expert testimony under Federal Rule of Evidence 702. The Court's "requirement that 'any and all scientific testimony or evidence admitted [be] not only relevant, but reliable,' 'entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.'" *Sigler v. American Honda Motor Co.,* 532 F.3d 469 (6th Cir. 2008) (quoting *Daubert,* 509 U.S. at 589, 592–93, 113 S.Ct. 2786) (internal citation omitted). "In short, under *Daubert* and its progeny, a party proffering expert testimony must show by a 'preponderance of proof' that the expert whose testimony is being offered is qualified and will testify to scientific knowledge that will assist the trier of fact in understanding and disposing of" relevant issues. *Pride v. BIC Corp.,* 218 F.3d 566, 578 (6th Cir. 2000).

4

### III.   ARGUMENT

#### a.   By his own admission, Mr. Dahl is not qualified to offer opinions about the origin and cause of the fire.

Mr. Dahl has a Bachelor's and Master's degree in Mechanical Engineering from Washington University and holds a professional engineering license in Missouri, Michigan and South Dakota. (Exh. 2, Dahl Dep., p. 24-25, 34).  He is employed by Nederveld, Inc., which, he explained, "provide[s] a variety of engineering services, civil engineering services, land planning development, surveying, and the segment I'm involved with, forensic engineering and fire investigation."  (Exh. 2, Dahl Dep., p. 17).  When Farm Bureau first retained Nederveld for this case, the matter was assigned to Dr. James Smith.  (Exh. 2, Dahl Dep., p. 49-50).  Mr. Dahl did not become involved until June 2018, when Dr. Smith announced his intention to leave Nederveld and the matter was reassigned to Mr. Dahl. (Exh. 2, Dahl Dep., p. 49-50).  Dr. Smith had already drafted a Rule 26 Report before Mr. Dahl became involved in the case. (Exh. 2, Dahl Dep., p. 55). Mr. Dahl reviewed the file, conferred with Dr. Smith and determined what needed to be done to finalize the Report. (Exh. 2, Dahl Dep., p. 49-51).  Indeed, Mr. Dahl never conducted a scene inspection or a product inspection, both of which Dr. Smith completed before his departure from Nederveld.  (Exh. 2, Dahl Dep., p. 48-49).  Mr. Dahl's contribution to the Report was the addition of the second paragraph on page two regarding a purported alternative design of the location of

5

the SCR canister; the rest of the Report was prepared by Dr. Smith.  (Exh. 2, Dahl Dep., p. 55).

Mr. Dahl testified in his deposition that, although he is "comfortable" testifying to everything contained in the Report, he does not feel qualified and competent to offer the opinions Dr. Smith provided:

> Q.  The portions that [Dr. Smith] provided, he's not here to testify. Do you feel qualified and competent to offer those same opinions that he was providing to the report?
>
> A.  No.
>
> * * *
>
> Q.  Okay. And, in particular, it looks like he is a certified fire investigator, he's a certified vehicle fire investigator, and he's also a master automotive technician. Those are certifications or qualifications that you don't possess, is that correct?
>
> A.  Correct.
>
> Q.  So as far as investigating the cause of the fire and certain aspects of the origin of the fire, are those areas that you would have to leave to others to offer those opinions?
>
> A.  Yes.

(Exh. 2, Dahl Dep., p. 41).   Under further questioning, Mr. Dahl expressly disclaimed expertise in the areas of the origin and cause of fires:

> Q.  Do you consider yourself an expert in fire cause and

6

origin?

A.   No.

Q.   Do you consider yourself an expert in fire dynamics and how fires spread?

A.   No.

Q.   Do you consider yourself an expert in heat transfer from one side of a material to another?

A.   No.

Q.   Do you consider yourself an expert in ignition temperatures of particular types of materials?

A.   No.

(Exh. 2, Dahl Dep., p. 43).

* * *

Q.   Do you consider yourself an expert in evaluating and reaching conclusions based on burn patterns?

A.   No.

Q.   Are you familiar with burn patterns? Do you see them in other cases?

A.   Yes.

Q.   If there is a V burn pattern, does that tell you anything?

A.   Oftentimes, V patterns are used by fire investigators to locate an origin.

Q.   But as far as interpreting those V patterns, you would

7

leave that to others?

A.  That's correct.

(Exh. 2, Dahl Dep., p. 75).  During his deposition, when asked whether he could eliminate other potential origin locations, he replied "Let me stop.  I am not a fire investigator.  I did not determine the origin."  (Exh. 2, Dahl Dep., p. 210).

Courts in this Circuit and others have excluded testimony from experts on matters in which the expert admits he does not possess the requisite knowledge, skill, experience, training or education.  *Avendt v. Covidien Inc.,* 314 F.R.D. 547, 561 (E.D. Mich. 2016) (excluding opinion of respected clinician and surgeon who, by his own admission, lacked expertise in the material or biomechanical science of crosslinking and had to rely on other experts in that area); *Thorn v. Novartis Pharmaceuticals Corp.,* 2013 WL 11451758 (E.D. Tenn. June 26, 2013) (excluding testimony regarding origin and nature of plaintiff's cancer, which would require scientific and specialized knowledge that physician expert conceded he did not possess);  *Long v. Monaco Coach Corp.,* 2007 WL 4613000, at *5-6 (E.D. Tenn. Sept. 27, 2007) (excluding expert offered to value motor coaches who "testified repeatedly that he was not an expert in the field of valuation"); *In re Baycol Prods. Litig.,* 532 F.Supp.2d 1029, 1047 ("...[if proffered expert] admits he is not qualified to provide opinions about a drug's comparative safety, such testimony is excluded under *Daubert*").

The fact that Mr. Dahl is relying on the opinions of his former colleague Dr. Smith, who may be qualified to offer fire origin and cause opinions, does not render Mr. Dahl's testimony admissible. *See, Sigler v. American Honda Motor Co*., 532 F.3d 469 (6th Cir. 2008).  In *Sigler,* the Sixth Circuit affirmed the exclusion of accident reconstruction opinions from an expert who, although qualified as a vehicle mechanic expert, did not have reconstruction expertise. The expert claimed that he had been assisted in developing his reconstruction opinions by a former state trooper who was so qualified.  In excluding the opinions, the District Court had noted that the expert's reliance on the expertise of another "only underscored the impropriety of [his] evidence as an expert on issues pertaining to accident reconstruction…." *Id.* at 479.  The Court further explained:

> [a] theoretical economist, however able, would not be allowed to testify to the findings of an econometric study conducted by another economist if [the theoretical economist] lacked expertise in econometrics and the study raised questions that only an econometrician could answer. If it were apparent that the study was not cut and dried, the author would have to testify; he could not hide behind the theoretician.

*Id. (*quoting *Dura Automotive Systems of Indiana, Inc. v. CTS Corp.,* 285 F.3d 609, 614 (7th Cir. 2002)).  Mr. Dahl admitted that he lacks the expertise of his former colleague Dr. Smith and, although he agrees with Dr. Smith's opinions, he also agrees that he is not qualified to offer them.

9

As the Court recognized in *Sigler,* an expert in one area cannot testify to the opinions of another expert that are outside the first expert's area of expertise. Thus only Dr. Smith can offer the origin and cause opinions that he developed. Because Mr. Dahl candidly conceded that he lacks the qualifications and expertise to give opinions about the origin and cause of the fire, he should be precluded from presenting any such opinions at trial.

> **b.     Mr. Dahl's design defect opinion is derivative of his origin and cause opinions; because he is not competent to offer origin and cause opinions, his design defect opinion is irrelevant and must be excluded.**

Mr. Dahl concludes that the design of the T8.390 tractor is defective because it "does not prohibit organic matter from entering the space surrounding the SCR catalyst."  (Exh. 1, Dahl Rule 26 Report, p. 2). Moreover, he says that the design does not allow reasonable access to clean the location between the SCR canister and the fuel tank **behind** the inlet pipe, which he points to as the point of the fire's origin.   (Exh. 1, Dahl Rule 26 Report, p. 2).  He notes that the polypropylene fuel tank wraps around the side and rear portions of the oval shaped SCR canister. (Exh. 2, Dahl Dep., p. 105). There are approximately two inches between the fuel tank and the canister, and within that two-inch gap there is an insulating blanket against the fuel tank composed of a reflective panel and fabric insulation and backing. (Exh. 2, Dahl Dep., p. 105).  He contends that the gap between the SCR canister and the insulating blanket allowed debris to accumulate in that area where

10

it was unable to self-clean. (Exh. 2, Dahl Dep., p. 113).  This, in turn he says, allowed debris that fell in that area to impede the release, through convection or conduction, of radiant heat from the canister.  (Exh. 2, Dahl Dep., p. 69-72).  He posits that radiant heat that becomes trapped in compacted debris can form a combustion pocket that reaches temperatures higher than that of the radiating surface. (Exh. 2, Dahl Dep., p. 70-71).  According to Mr. Dahl, this can cause the accumulated debris to ignite without ever contacting the canister surface. (Exh. 2, Dahl Dep., p. 69-72).  Mr. Dahl states that the Tractor's design is defective because it allows crop debris to accumulate between the SCR canister and the fuel tank, where air flow is impeded, and combustion pockets capable of igniting the debris can form.  (Exh. 1, Dahl Rule 26 Report, p. 2).

Mr. Dahl's design defect opinion is based on two assumptions: (1) that the fire originated between the SCR canister and the fuel tank, to the rear of the inlet pipe, and (2) that compacted debris and lack of airflow in that area allowed radiant heat from the canister to form high temperature combustion pockets that ignited the debris.  The only evidence in the record supporting these assumptions is Mr. Dahl's opinion testimony about the origin and cause of the fire – testimony that he candidly admits he is not qualified by education, training or expertise to give.

His design defect opinion loses all relevance if the fire's origin is assumed to be in front of SCR canister, as advanced by Farm Bureau's origin expert, Mr.

11

Wilson. The front of the SCR canister is not adjacent to the fuel tank. (Exh. 2, Dahl Dep., p. 104-105). Instead, there is a removable shield that has a gap at the bottom – which Mr. Dahl refers to as a mail slot – through which debris can fall out and air can circulate. (Exh. 2, Dahl Dep., p. 112). Unlike the rear area between the canister and fuel tank, where accumulated debris cannot be seen, removing the front shield allows access to accumulated debris in front of the canister. (Exh. 2, Dahl Dep., p. 117-118). Moreover, the mail slot at the base of the front shield allows a convective air current to travel through that compartment and up to the opening at the top. (Exh. 2, Dahl Dep., p. 176-177). Consequently Mr. Dahl would not expect convection reduction to elevate the temperature of the exhaust components on the front side of the canister. (Exh. 2, Dahl Dep., p. 213-214).

"Rule 702 restates *Daubert* 's insistence on the requirements that an expert's opinion be based on a foundation grounded in the actual facts of the case, that the opinion is valid according to the discipline that furnished the base of special knowledge, and *that the expert appropriately "fits" the facts of the case into the theories and methods he or she espouses*. (internal citation omitted)" *Marathon Petroleum Co. LP v. Midwest Marine, Inc*., 906 F.Supp.2d 673, 684 (E.D. Mich. 2012) (Emphasis added.) "In addition, expert testimony is not admissible unless it will be helpful to the fact finder. Such testimony is unhelpful when it is unreliable or irrelevant, as the Court observed in *Daubert....*" *Id.* Mr. Dahl's design defect

opinion is grounded on an origin and causation theory that his former colleague Dr. Smith devised, but Dr. Smith is not designated as an expert in this case.  Mr. Dahl adopted and espoused that theory in his deposition, but by his own admission he is not qualified to give that opinion.  Farm Bureau's other expert, Mr. Wilson, has offered a different origin and cause theory, but Mr. Dahl's design defect opinion does not "fit" Mr. Wilson's theory.  As such, Mr. Dahl's design defect opinion has no foundation in any admissible factual or expert evidence, is merely theoretical, and will not assist the jury in determining any fact at issue.  Mr. Dahl's design defect opinion should be excluded.

## CONCLUSION

Mr. Dahl concedes that the fire cause and origin opinions contained in his Rule 26 Report were developed by a former colleague who possesses expertise in the field of fire investigation that Mr. Dahl does not have.  Because Mr. Dahl, by his own admission, is not qualified or competent to offer the opinions about the origin or cause of the Tractor fire devised by his colleague, his testimony on those subjects should be excluded.

Mr. Dahl's design defect opinion specifically pertains to the origin location opinion that must be excluded.  Because Farm Bureau's other expert places the origin of the fire in a different location, Mr. Dahl's design defect opinion is

13

irrelevant, will not assist the jury in determining any fact in issue, and should be excluded.

Dated: November 30, 2018                    Respectfully Submitted,

                                            s/Bethany G. Stawasz
                                            David W. Centner (P43071)
                                            Bethany G. Stawasz (P75578)
                                            CLARK HILL, PLC
                                            200 Ottawa Avenue NW, Suite 500
                                            Grand Rapids, MI  49503
                                            Phone: (616) 608-1100
                                            dcentner@clarkhill.com
                                            bstawasz@clarkhill.com
                                            *Counsel for Defendant,*
                                            *CNH Industrial America, LLC*

                                            and

                                            D. Christopher Robinson (pro hac vice)
                                            Jessica Williams Schnelker (pro hac vice)
                                            FROST BROWN TODD LLC
                                            201 N. Illinois Street, Suite 1900
                                            Indianapolis, IN  46204
                                            Phone: (317) 237-3800
                                            jschnelker@fbtlaw.com
                                            *Counsel for Defendant,*
                                            *CNH Industrial America, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on November 30, 2018, my assistant, Alyssa Theisen, electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all registered counsel.

                                            s/Bethany G. Stawasz
                                            Bethany G. Stawasz (P75578)

14